# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **CHRIS WRIGHT and CURTIS YOUNCE, on behalf of themselves and all others similarly situated,**<br><br>  Plaintiffs,<br>  -against-<br><br>**FLAGSTAR BANK FSB and FLAGSTAR BANCORP, Inc.,**<br><br>  Defendants. | No. 13 Civ. 15069 (PJD) |

## ORDER APPROVING SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

Plaintiffs are former Assistant Branch Managers ("ABMs") employed by Flagstar Bank FSB and Flagstar Bancorp, Inc. (collectively "Defendants" or "Flagstar"). Plaintiffs were classified by Defendants as exempt from federal and state statutory overtime protections.

On December 13, 2013, Plaintiffs filed this collective action complaint, alleging that Flagstar violated the FLSA by misclassifying them and other Flagstar ABMs who worked in Flagstar branches as exempt from federal overtime pay requirements. On January 2, 2014, Arroll Krumpelman filed his Consent to Join Form pursuant to 29 U.S.C. § 216(b) to become a party to the lawsuit. Defendants filed an Answer on January 27, 2014. On February 3, 2014, Kyle Greer filed her Consent to Join Form pursuant to 29 U.S.C. § 216(b) to become a party to the lawsuit. On February 12, 2014, Plaintiffs filed their Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("216(b) Motion").

The parties then entered into an agreement to stay the 216(b) Motion to conduct pre-conditional certification discovery, and a tolling agreement for the FLSA claims of absent

putative members of the collective, which was approved by the Court on February 20, 2014.

Over the next several months, the parties engaged in formal discovery. Plaintiffs served document requests on Defendants, and Defendants noticed the depositions of the four Named and Opt-In Plaintiffs and served document requests on them. Defendants produced over 3,000 pages of documents to Plaintiffs, including job descriptions for the ABM positions and corporate documents discussing the ABM position. Defendants also took the depositions of the four Named and Opt-In Plaintiffs.

During formal discovery, the parties agreed to exchange additional information to attempt to resolve the case. Defendants produced documents to allow the parties to calculate potential damages, including data showing the number of potential collective action members in the ABM job title, salaries, incentive pay, weeks worked, and location of employment. Plaintiffs analyzed this data and constructed a damages model. Thereafter, Plaintiffs made a demand and the parties agreed to mediation utilizing a private mediator.

On July 8, 2014, the parties attended private mediation in Atlanta, Georgia, with Hunter Hughes of Rogers & Hardin, LLP, an experienced and well-regarded employment class and collective action mediator. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, *et al.*, 2010 WL 1948198, at *5 (S.D.N.Y. May 11, 2010) (approving settlement mediated by the "experienced class action mediator Hunter Hughes"). At the mediation, the parties reached an agreement on the material terms of the settlement. During the next several weeks, the parties finalized the terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement") executed by the parties on or about September 4, 2014.

Flagstar denies that it committed any wrongdoing or violated any federal, state or local laws pertaining to payment of wages or hours worked and vigorously disputed the claims asserted in the Litigation.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

*APPROVAL OF THE SETTLEMENT*

1. The Court approves and incorporates by reference all of the definitions contained in the Settlement Agreement. The Court has jurisdiction over the subject matter of the Litigation, the Eligible Settlement Class Members, and Defendants.

2. The Court hereby approves the settlement on behalf of all Participating Settlement Class Members.

3. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1-2 (E.D. Tenn. Dec. 26, 2012). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499,

at *9 (E.D. Ky. Oct. 23, 2008). "Settlement is the preferred means of resolving litigation." *Crawford*, 2008 WL 4724499, at *9 (FLSA collective action).

  4. Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent class members for the court to protect.").

  5. Thus, because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, *see Thompson v. Bruister & Associates, Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013); *Bozak*, 2014 WL 3778211, at *3. Accordingly, the exacting standards for approval of a class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b).

  6. The FLSA settlement in this case meets the standard for approval. The settlement was the result of vigorously contested litigation with substantial discovery, including depositions of all four Named and Opt-In Plaintiffs, a motion for collective certification, and arm's-length negotiations.

7. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after private mediation before an experienced mediator. Swartz Decl. ¶¶ 35, 39. At all times during the settlement negotiation process, negotiations were conducted at arm's-length. *Id.* ¶ 40. Moreover, "[t]he endorsement of the parties' counsel is entitled to significant weight." *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006).

## *APPROVAL OF FORM OF NOTICE AND NOTICE PROCESS*

8. The moving parties have also presented to the Court, for its review, a proposed Notice and a plan to provide notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class. The form of the notice attached to the Settlement Agreement is approved as the notice to be sent in this action (the "Notice"). After the signing of this Order, Plaintiffs shall make any necessary corrections to the dates in the Notice.

9. The Court also finds that the plan for sending the Notice as proposed by the moving parties is the best practical plan under the circumstances.

10. Notice of the proposed Settlement shall be given by mailing the "Notice of Settlement" by first class mail, postage prepaid, to all Eligible Settlement Class Members pursuant to the applicable provisions in the Settlement Agreement, at their Last Known Addresses, within ten (10) days after entry of this Order. Defendant shall provide the Settlement Administrator with the information necessary to conduct this mailing as set forth in the Settlement Agreement.

11. Eligible Settlement Class Members shall have a period of ninety (90) days from the mailing of the Notice within which to submit to the Settlement Administrator a Consent to Join Settlement, Release and Claim Form to participate in the settlement.

## *SERVICE AWARDS*

12. The Court finds reasonable service awards of $9,000 each to Plaintiffs Christopher Wright and Curtis Younce and Opt-In Plaintiffs Kyle Greer and Arroll Krumpelman for their service to the collective. The amount shall be paid from the Gross Settlement Amount.

13. Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Dec. 13, 2011) (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *3 (D. Conn. July 26, 2012); *Clark*, 2010 WL 1948198, at *9; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers") (internal quotes and citation omitted); *see also* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of

6

claims in the prosecution of civil and wage and hour rights); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.").

14. Incentive awards are within the discretion of the court. *See Dallas v. Alcatel Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10-11 (E.D. Mich. May 20, 2013); *Date v. Sony Elecs., Inc.*, No. 07 Civ. 15474, 2013 WL 3945981, at *13 (E.D. Mich. July 31, 2013); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court."; Incentive "awards are particularly appropriate in the employment context."). In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.*, *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *see also Dallas*, 2013 WL 2197624, at *10 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same). Here, Plaintiffs satisfy all three factors.

15. First, Plaintiffs and Opt-In Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to those potential collective action members. As discussed in greater detail below, Plaintiffs Christopher

7

Wright and Curtis Younce and Opt-In Plaintiffs Kyle Greer and Arroll Krumpelman each participated in a substantial pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, submitted declarations in support of Plaintiffs' conditional certification motion, responded to Defendants' discovery requests, and prepared and sat for full-day depositions. *See* Swartz Decl. ¶ 48; *see Date*, 2013 WL 3945981, at *13 (awarding service award in common fund case for, *inter alia*, class representative's "responding to discovery and sitting for his deposition"); *Bert*, 2008 WL 4693747, at *3 (substantially same); *see also Frank*, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).

16. Second, Plaintiffs and Opt-In Plaintiffs undertook substantial possible direct and indirect risk. The Named Plaintiffs agreed to bring the action in their name, to draft and sign declarations on penalty of perjury, to be deposed, and to testify if there was a trial. Swartz Decl. ¶ 47. Opt-in Plaintiffs similarly agreed to be party plaintiffs in the case, to draft and sign declarations on penalty of perjury, to be deposed, and to testify if there was a trial. *Id.* In so doing, they assumed the risk of retaliation and blacklisting. *Id.*; *see Frank*, 228 F.R.D. at 187 (Incentive "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers")*; see also Bozak*, 2014 WL 3778211, at *5 (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of

8

receiving an additional payment, lest others be dissuaded."); *Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").

17. Even where there is not a record of actual retaliation, as appears to be the case here, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

18. Although Plaintiffs were no longer employed by Defendants when they joined the lawsuit, they risked retaliation from their current employers and put their ability to secure future employment at risk. *See Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees [] fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 WL 532960, at *1.

9

19. Third, Plaintiffs and Opt-In Plaintiffs spent a significant amount of time and effort in pursing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent assisting with the preparation and review of the complaint, providing declarations in support of Plaintiffs' collective certification motion, responding to Defendants' document requests, and preparing and sitting for full-day depositions. Swartz Decl. ¶ 49; *Date*, 2013 WL 3945981, at *13; *Bert*, 2008 WL 4693747, at *3.

20. Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment class and collective actions in this Circuit. *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("The modest class representative award requests of $10,000 to each of the two Class Representatives have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this [FLSA] action."); *Bert*, 2008 WL 4693747, at *1, *3 (finding service award of $10,000 to five class representatives was "rather modest" and "fair and reasonable" in employment discrimination case). In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards that are larger than what Plaintiffs request here. *See Swigart*, 2014 WL 3447947, at *7 ($10,000); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell*, 2012 WL 1320124, at *14-15 (approving service payments of $10,000 and

10

$15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving $15,000 and $10,000 to named plaintiffs)

21. Accordingly, service awards of $9,000 each to Plaintiffs Christopher Wright and Curtis Younce and Opt-In Plaintiffs Kyle Greer and Arroll Krumpelman are approved.

### *AWARD OF FEES AND COSTS TO PLAINTIFFS' COUNSEL*

22. The Court awards Plaintiffs' Counsel a total of $445,000 in attorneys' fees and $27,289.33 in actual costs and expenses from the Gross Settlement Amount.

23. This amount is reasonable. The purpose of the FLSA attorney's fees provision is to "insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Farmer v. Ottawa Cnty.*, 211 F.3d 1268, 2000 WL 420698, at *7 (6th Cir. 2000)) (citing *United Slate*, 732 F.2d at 502); *see Wilson v. D & N Masonry, Inc.*, No. 12 Civ. 922, 2014 WL 1789136, at *1 (S.D. Ohio May 5, 2014) ("The purpose of the FLSA attorney fees provision" is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citing district court citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)) (internal quotes omitted); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("The purpose of allowing an award of attorney's fees under FLSA cases is to encourage employees to vindicate what Congress considers an important right to receive wages designed to ensure a minimum standard of living."); *see also Bozak*, 2014 WL 3778211, at *6 ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotes and

citation omitted).

24. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley*, 19 F.3d at 1134 ("The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citation and internal quotation marks omitted); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) (observing that "broad remedial purpose" of FLSA should be given "liberal construction"); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce . . . benefits in order to maintain an incentive to others"); *Bozak*, 2014 WL 3778211, at *6 (collecting cases); *Vazquez v. Ranieri Cheese Corp.*, No. 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA . . . [was] designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements.") (citation omitted).

25. In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award, which courts generally determine based upon the percentage-of-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993) (finding clear "trend towards adoption of a percentage of the fund method in [common fund] cases"); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17 (stating Sixth Circuit has recognized numerous advantages to percentage of fund method); *Bessey v. Packerland Plainwell, Inc.*, No.

12

06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) ("The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531-32 (finding application of "percentage-of-the-[common-]fund approach appropriate); *Aros*, 2012 WL 3060470, at *5; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011); *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ("[I]n common-fund cases, we require only that awards of attorney's fees be reasonable under the circumstances.") (citation and internal quotes omitted).

26. In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement class members who do not file claims revert to defendants. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980) (stating that this approach "rectifies [] inequity by requiring every member of the class to share attorney's fees to the same extent that he cans hare the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount *allocated*"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 14.03 (3d

13

ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of funds made available).

27. Plaintiffs' Counsel's request for $445,000 in attorneys' fees will result in a lodestar multiplier of 2.16. This is on the low end of what courts have awarded in class action settlements. *See, e.g.*, *Beckman v. Keybank, N.A.*, 2013 WL 1803736, at *13 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." ); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503–04 (E.D. Mich. 2000) (approving an effective multiplier of 2.21); s*ee also Steiner v. Am. Broad. Co.*, 248 Fed. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of 6.96); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y.

14

Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1, 169 (S.D.N.Y. 1991) (awarding multiplier of 8.74).

28. Here, Plaintiffs' Counsel have secured a substantial cash payment of up to $1,335,000. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). In addition to the monetary award achieved, Defendants also reclassified the ABM position as non-exempt, to the benefit of all current and future ABMs. Swartz Decl. ¶ 43.

29. Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. Swartz Decl. ¶ 53; *see also Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (citing as justification for one-third recovery from common fund "[t]he contingent nature of the fee agreement," which "meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved"). The requested award is consistent with the norms of class and collective litigation in this circuit. *See, e.g.*, *Dillworth*, 2010 WL 776933, at *8 (finding attorneys' fees award of one-third of common fund was "reasonable and has been approved in similar FLSA collective actions in [the Northern District of Ohio]") (collecting cases); *Bessey*, 2007 WL 3173972, at *4 (approving attorneys' fees of approximately 33% of the common fund in FLSA case and noting that "[e]mpirical

15

studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (citation omitted); *see also In re Se. Milk Antitrust Litig.*, No. 08 MD 1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (finding reasonable award of one-third of settlement fund; granting $52,866,667, in addition to previous award of $48,333,333); *Dallas*, 2013 WL 2197624, at *12 (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions")

30. The fee requested by Plaintiffs' Counsel also is reasonable because they will continue to perform work on behalf of the collective in implementing the settlement, but will not make a supplemental fee application. *See Bozak*, 2014 WL 3778211, at *8. Plaintiffs' Counsel anticipate that they will be required to spend substantial additional time administering the settlement in the future, including answering questions from Eligible Settlement Class Members about the case and working with the Settlement Administrator. Swartz Decl. ¶ 55; Shavitz Decl. ¶ 20. Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

31. The Court awards Plaintiffs' Counsel $445,000 in attorneys' fees.

32. Plaintiffs' Counsel also has incurred $27,289.33 in out-of-pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees. Swartz Decl. ¶ 54; Shavitz Decl. ¶ 14 ; Bonanni Decl. ¶ 11; *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "documented by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*,

16

218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases").

33. The Court awards Plaintiffs' Counsel $27,289.33 in costs.

***STAY PENDING DISMISSAL AND CONTINUING JURISDICTION TO ENFORCE SETTLEMENT***

34. Within fifteen days after the time period for ABMs who return completed and returned Consent to Join, Release, and Claim Forms to negotiate their settlement checks, the parties will file a joint stipulation of dismissal with prejudice. Until such time, this matter is stayed.

35. Upon dismissal, the Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 19th day of September, 2014.

s/Patrick J. Duggan
Patrick J. Duggan
United States District Judge

Dated: September 19, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2014, by electronic and/or ordinary mail.

s/Marilyn Orem
Case Manager

17