Dorothy A. O'Brien
O'Brien & Marquard, P.L.C.
2322 E. Kimberly Road Ste. 100E
Davenport, IA 52807
Telephone: (563) 355-6060
Fax: (563) 355-6666
Email: dao@emprights.com

Justin M. Swartz (admitted *pro hac vice*)
Sally J. Abrahamson (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Fax: (212) 977-4005
E-Mail: jms@outtengolden.com

Gregg I. Shavitz (admitted *pro hac vice*)
Paolo Meireles (admitted *pro hac vice*)
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
E-mail: gshavitz@shavitzlaw.com
E-Mail: pmeireles@shavitzlaw.com

*Attorneys for Plaintiffs and proposed FLSA Collective and California
Class Members*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| MARIA MELLER, DEBRA ANDERSON, CYNTHIA PASH, and EDDIE CAPOVILLA, on behalf of themselves and those similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>BANK OF THE WEST,<br><br>                    Defendant. | Case No.: 18-cv-00033-JAJ-RAW<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR CERTIFICATION OF THE CALIFORNIA SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT** |

## TABLE OF CONTENTS

**PAGE**

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 1

    I.    Investigation ...................................................................................................... 2

    II.   Mediation and Settlement Negotiations ............................................................ 2

    III.  Litigation ........................................................................................................... 3

    IV.  Plaintiffs' Motion for Preliminary Approval...................................................... 3

    V.   CAFA Notice ...................................................................................................... 3

SUMMARY OF SETTLEMENT TERMS ........................................................................... 4

    I.    The Settlement Fund .......................................................................................... 4

    II.   Settlement Class ................................................................................................. 4

    III.  Allocation Formula............................................................................................ 4

    IV.  Releases ............................................................................................................. 5

    V.   Attorneys' Fees and Costs ................................................................................. 6

    VI.  Service Payments .............................................................................................. 6

    VII. Claims Administrator ........................................................................................ 6

ARGUMENT ........................................................................................................................ 7

    I.    The Settlement Meets the Legal Standard for Class Certification. ................... 7

         A.   The Class Is So Numerous That Joinder of All Members Is Impracticable.... 8

         B.   The Questions of Law and Fact Common to the Classes Predominate
             Over Questions Affecting Only Individual Class Members. .......................... 9

         C.   Named Plaintiffs' Claims Are Typical of the Claims of the Class
             Members. ....................................................................................................... 9

         D.   Named Plaintiffs Will Fairly and Adequately Protect the Interests of the
             Class. .......................................................................................................... 10

E.    Certification is Proper under Rule 23(b)(3). ................................... 11

    1.    Common Questions Predominate. ...................................... 11

    2.    A Class Action is a Superior Mechanism. ......................... 12

II.    The Proposed Settlement is Fair, Adequate, and Reasonable. ................... 12

    A.    The Settlement Was the Result of Extensive Arm's-Length Negotiations and a Mediator's Proposal. ....................................... 13

    B.    The Settlement Satisfies the *Van Horn* Factors................................ 14

    1.    Balancing the Strength of Plaintiffs' Case Against the Terms of the  Settlement Favors Approval......................................... 14

    a.    Risk on the Merits and Class Certification Support the Settlement. ................................................................ 14

    b.    The Settlement Agreement Provides a Favorable Recovery for the Class. ............................................... 15

    2.    Defendant's Financial Condition Favors Approval. ........................... 16

    3.    The Complexity and Expense of Further Litigation Favors Approval......................................................................... 17

    4.    The Reaction of the Class Favors Approval. ...................................... 17

    5.    The Objections of a Non-Participating Potential FLSA Opt-In Plaintiff Are Without Merit. ................................................ 18

III.    Approval of the FLSA Settlement is Appropriate Under Federal Law..................... 19

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE(S)**

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) .............................................................................................10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................................................11

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................................10

*Bell v. Citizens Fin. Grp., Inc.*,
    No. 10 Civ. 320 (W.D. Pa).......................................................................................... 14-15

*Bijoux v. Amerigroup New York, LLC*,
    No. 14 Civ. 03891 (E.D.N.Y. Feb. 9, 2016) ......................................................................10

*Boland v. Baue Funeral Home Co.*,
    No. 15 Civ. 00469, 2015 WL 7300507 (E.D. Mo. Nov. 18, 2015) .......................................20

*Burch v. Qwest Commc'ns Int'l, Inc.*,
    677 F. Supp. 2d 1101 (D. Minn. 2009)................................................................................12

*Clem v. KeyBank, N.A.*,
    No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)............................................16

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ......................................................................................11, 17

*Eastwood v. S. Farm Bureau Cas. Ins. Co.*,
    No. 11 Civ. 03075, 2014 WL 4987421 (W.D. Ark. Oct. 7, 2014) .......................................18

*Edwards v. Orchestrate Hosp. Grp., L.L.C.*,
    No. 16 Civ. 00063, 2017 WL 2423792 (S.D. Iowa Feb. 23, 2017)...............................7, 9, 11

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................................9

*Gentry v. C & D Oil Co.*,
    102 F.R.D. 490 (W.D. Ark. 1984) ........................................................................................8

*George v. Uponor Corp.*,
    No. 12 Civ. 246, 2015 WL 5255280 (D. Minn. Sept. 9, 1995) ..................................13, 14, 17

*Grove v. Principal Mut. Life Ins. Co.*,
    200 F.R.D. 434 (S.D. Iowa 2001)..........................................................................................13

*Huyer v. Buckley*,
  849 F.3d 395 397-400 (8th Cir. 2017) ........................................................... 18-19

*Jones v. Casey's Gen. Stores, Inc.*,
  266 F.R.D. 222 (S.D. Iowa Oct. 22, 2009) .................................................... *passim*

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ............................................................................15

*Khoday v. Symantec Corp.*,
  No. 11 Civ. 18, 2016 WL 1637039 (D. Minn. Apr. 5, 2016) ................................17

*King v. Raineri Constr., LLC*,
  No. 14 Civ. 1828, 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) ...........................20

*Lizondro-Garcia v. Kefi LLC*,
  No. 12 Civ. 1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ............................8

*McClean v. Health Sys., Inc.*,
  No. 11 Civ. 03037, 2012 WL 607217 (W.D. Mo. Feb. 23, 2012)...........................8, 9, 10, 11

*McKenna v. Champion Int'l Corp.*,
  747 F.2d 1211 (8th Cir. 1984), .........................................................................20

*Palacio v. E*Trade Fin. Corp.*,
  No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) .........................10

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) ........................................................................9, 10

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .....................................................................12, 13

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995)........................................................................11

*Scott v. Chipotle Mexican Grill, Inc.*,
  No. 12 Civ. 8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) .........................15

*In re U.S. Bancorp Litig.*,
  291 F.3d 1035 (8th Cir. 2002) ..........................................................................19

*Van Horn v. Trickey*,
  840 F.2d 604, 607 (8th Cir. 1988) ................................................................13, 18

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993).....................................................................14

*Williams v. Metro-North R.R. Co.*,
  No. 17 Civ. 3847, 2018 WL 3370678 (S.D.N.Y. June 28, 2018)............................................10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ................................................................................................16

*Zilhaver v. United Health Group, Inc.*,
  646 F. Supp. 2d 1075 (D. Minn. 2009)................................................................................18

**STATUTES**

28 U.S.C. § 1715(d) ...........................................................................................................................3

29 U.S.C. § 255(a) ...........................................................................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Plaintiffs Maria Meller, Debra Anderson, Cynthia Pash, and Eddie Capovilla (collectively, "Plaintiffs") respectfully request that the Court grant their Motion for Certification of the California Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  The $2,620,000.00 settlement fund for this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs seek an order: (1) certifying the California Settlement Class described below for purposes of effectuating the settlement; (2) granting final approval of the California Settlement Class settlement, as set forth in the Settlement Agreement and Release ("Settlement Agreement") attached as Ex. A to the Declaration of Justin M. Swartz ("Swartz Decl.");[1] and (3) approving the Fair Labor Standards Act ("FLSA") settlement.

On April 16, 2018, this Court took the first step in the settlement approval process by preliminary approving the Settlement Agreement; provisionally certifying the California Settlement Class for settlement purposes pursuant to Federal Rule of Civil Procedure 23; appointing Outten & Golden LLP, Shavitz Law Group, P.A., and O'Brien & Marquard, P.L.C. as Class Counsel; directing that notice be sent to Class Members; and setting August 9, 2018 as the date for the final approval hearing.  *See* ECF No. 6 (Order Granting Preliminary Approval).  The Court further approved the proposed class Notices.  The response from Class Members has been overwhelmingly positive.  No California Class Member has objected to or requested exclusion from the settlement.  *See* Ex. C (Declaration of Patrick Hughes for Rust Consulting, Inc. ("Hughes Decl."))  ¶ 21.  Accordingly, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, FLSA Collective Members, and California Class Members, as defined herein,

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Decl.

are current and former employees of Defendant who worked as exempt Customer Service Managers ("CSMs") at Bank of the West's over 600 locations in Iowa, California, and approximately 17 other states around the country at any time between October 1, 2013 and April 16, 2018.  *See* Ex. A (Settlement Agreement) §§ 1.6, 1.23; ECF No. 1 (Compl.) ¶ 2.  Plaintiffs allege that Bank of the West violated the FLSA and California law by improperly classifying them as exempt employees and failing to pay them and other CSMs overtime wages.

## I.      Investigation

Prior to filing this case, Plaintiffs' Counsel conducted a thorough investigation into the merits of the claims, the proper measure of damages, the legal exemptions that apply to the banking industry, and the likelihood of class and collective certification.  Swartz Decl. ¶ 13. Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs and other CSMs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  *Id.* ¶ 14.  Plaintiffs' Counsel also obtained and reviewed documents from Plaintiffs and other CSMs related to their employment with Bank of the West.  *Id.* ¶ 15.

## II.     Mediation and Settlement Negotiations

On May 20, 2014, Plaintiffs' Counsel initiated communications with Defendant aimed at exploring a pre-litigation resolution of these claims.  *Id.* ¶ 16.  The parties subsequently agreed to attend a pre-suit mediation to attempt to settle this matter.  *Id.* ¶ 17.  Prior to the mediation, Defendant produced payroll information for CSMs, which Plaintiffs used to perform damages calculations, and other documents.  *Id.* ¶ 18.

On October 16, 2014, the parties participated in a mediation session in San Francisco, California, conducted by David Rotman, an experienced class action mediator.  *Id.* ¶ 19.  After a full day of extensive arm's-length negotiations, the parties were unable to reach an agreement.

However, they agreed to participate in another mediation session, which took place on February 12, 2015, with Mr. Rotman. *Id.* ¶ 21.   After the second session with Mr. Rotman and extensive further negotiations, with the continued assistance of Mr. Rotman, the parties reached an accord resulting in the Agreement, which the parties executed on February 27, 2018. *See id.* ¶¶ 23-24.

## III.    Litigation

As contemplated in the Agreement, on March 29, 2018, Plaintiffs filed a Class and Collective Action Complaint in this Court alleging that Defendant violated the FLSA and California law by improperly classifying them and the other FLSA Collective and California Class Members as exempt from overtime requirements and failing to pay them overtime wages. *See* Ex. A (Agreement) § 2(A); ECF No. 1 (Compl.).  Plaintiffs also alleged that Defendant violated California state record-keeping laws, California meal and rest period provisions, California waiting time provisions, the California Unfair Competition Law, and the California Private Attorneys General Act ("PAGA").  ECF No. 1 (Compl.) ¶¶ 82-115.

## IV.    Plaintiffs' Motion for Preliminary Approval

On April 12, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class and Collective Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notices of Settlement ("Motion for Preliminary Approval"), which the Court granted on April 16, 2018. *See* ECF Nos. 5-6.

## V.    CAFA Notice

Defense counsel sent notices to federal and state authorities as required by the Class Action Fairness Act, with copies to Plaintiffs' Counsel, on April 26, 2018. *See* 28 U.S.C. § 1715(d); Swartz Decl. ¶ 27.  The 90-day CAFA notice period concluded on July 25, 2018.  No federal or state authorities objected to the settlement.  Ex. C (Hughes Decl.) ¶ 19.

## SUMMARY OF SETTLEMENT TERMS

### I.    The Settlement Fund

Defendant agreed to fund a Maximum Settlement Amount of $2,620,000.00 to resolve

FLSA Collective Opt-Ins' and California Class Members' claims.  Ex. A (Agreement) § 1.29.  In

addition to individual settlement awards for those Class Members who have submitted claims,

the Maximum Settlement Amount will cover: (1) Court-approved attorneys' fees and costs for

Class Counsel; (2) Court-approved Service Awards to Plaintiffs; (3) employer payroll taxes; (4)

payments to certain individuals whose claims were included in the parties' discussions but which

have since fallen outside of the settlement class period; (5) the Claims Administrator's fees and

costs; and (6) payment to the California Labor and Workforce Development Agency ("LWDA")

of a percentage of the penalties allocated to claims under the California Labor Code Private

Attorneys General Act.  *Id.*

### II.    Settlement Class

CSMs eligible to receive settlement payments included two groups: (1) all

individuals employed by Bank of the West as CSMs in any states other than California between

October 1, 2013 and April 16, 2018 ("FLSA Collective Members"); and (2) all individuals

employed by Bank of the West as CSMs in California between October 1, 2013 and April 16,

2018 ("California Class Members").  *See id.* §§ 1.6, 1.23.  There are approximately 573 FLSA

Collective Members and approximately 351 California Class Members.[2]  Swartz Decl. ¶ 28.

### III.    Allocation Formula

The proportionate share of the Net Class Settlement Fund that each FLSA Collective and

---

[2]      Plaintiffs' Memorandum of Law in Support of Preliminary Approval mistakenly
indicated that there were approximately 1,100 FLSA Collective Members and approximately 140
California Class Members.  *See* ECF No. 5 (Memorandum of Law in Support of Preliminary
Approval) at 4.

California Class Member was eligible to claim was calculated based on weeks worked from
October 1, 2013 through April 16, 2018, as reflected in Bank of the West's reasonably available
business records. *See* Ex. A (Agreement) § 9.5. Specifically, the Claims Administrator assigned
each FLSA Collective Member one point for each eligible week worked as a CSM and each
California Class Member three points for each eligible week worked as a CSM. *Id.* § 9.5(A)(1)-
(2).[3] The method to be used for computing Eligible Workweeks is set forth in the Agreement.
*Id.* § 1.16. The Claims Administrator then added together all points for all FLSA Collective and
California Class Members to obtain a "Denominator," divided the number of points for each
FLSA Collective and California Class Member by the Denominator to obtain each individual's
"Portion of the Net Class Settlement Fund," and multiplied that fractional amount by the Net
Class Settlement Fund to determine each individual's Net Amount. *Id.* § 9.5(A)(3). Each FLSA
Collective and California Class Member who submitted a valid Claim Form to the Claims
Administrator prior to the Bar Date will receive a settlement payment. *Id.* § 1.2.

## IV.    Releases

All California Class Members who did not opt out of the settlement will release
California wage and hour claims arising out of their employment as a CSM, for the period
October 1, 2013 through April 16, 2018. *Id.* §§ 1.37, 10.1(A). All FLSA Collective Opt-Ins and
California Class Members who returned a valid Claim Form will release all federal and
applicable state law wage and hour claims arising out of their employment as a CSM, from
October 1, 2013 through April 16, 2018. *Id.* §§ 1.38, 10.1(B).

---

[3]     California Class Members are assigned additional points to account for the state-law
claims.

V.      **Attorneys' Fees and Costs**

Plaintiffs' Counsel will apply for one-third of the Maximum Settlement Amount,

$873,333.33, as attorneys' fees.  *Id*. § 9.2(A).  Plaintiffs' Counsel also will seek reimbursement

for their reasonable litigation costs and expenses from the Gross Class Settlement Amount.  *Id.*

Plaintiffs have filed a separate application for an award of attorneys' fees and costs.

VI.     **Service Payments**

In addition to their payments under the allocation formula, Plaintiffs seek Court approval

for Service Awards of $8,000 each to the four Named Plaintiffs.  *Id*. § 9.3.  Plaintiffs have

moved separately for Court approval of these Service Awards.

VII.    **Claims Administrator**

The parties retained Rust Consulting, Inc.,[4] an experienced wage and hour claims

administrator, as the Claims Administrator.  *Id.* § 3(A).  The Claims Administrator's fees and

costs will be paid from the Gross Class Settlement Amount.  *Id.* § 3(B).

On May 16, 2018, Rust mailed Court-approved Notices to 351 California Class Members

and 573 FLSA Collective Members (collectively, "Class Members").  Ex. C (Hughes Decl.) ¶

12.  After the Notices were mailed, Rust received 38 Notices returned as undeliverable with no

forwarding address.  *Id*. ¶ 13.  Rust performed 38 address traces for these undeliverable Notices

and re-mailed 31 of them to Class Members for whom new addresses were located, with one

being returned to Rust as undeliverable a second time.  *Id*.  Notices were ultimately

undeliverable to a total of eight Class Members.  *Id*.

The Notice advised California Class Members, among other things, that they could object

to or exclude themselves from the settlement.  *See id.* at Ex. A (California Notice) §§ 11, 15.  No

---

[4]      http://www.rustconsulting.com

California Class Member has objected to or requested exclusion from the settlement.  *Id.* ¶ 21.[5]

Class Counsel received numerous telephone calls and emails from Class Members with questions

about the settlement or to provide updated contact information.  Swartz Decl. ¶ 29.  On June 4,

2018, and again on June 25, 2018, Rust mailed Reminder Postcards to Class Members who had

not yet returned Claim Forms.  *See* Ex. C (Hughes Decl.) ¶¶ 15-16.  In total, 260 California Class

Members and 344 FLSA Collective Members submitted Claim Forms and will receive individual

settlement payments if the settlement is given final approval.  *See id.* ¶ 17.

<u>**ARGUMENT**</u>

**I.       The Settlement Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the

settlement class can be certified.  *See, e.g.*, *Edwards v. Orchestrate Hosp. Grp., L.L.C.*, No. 16

Civ. 00063, 2017 WL 2423792, at *1-2 (S.D. Iowa Feb. 23, 2017), *report and recommendation

adopted*, 2017 WL 2727763 (S.D. Iowa Mar. 14, 2017).

On April 16, 2018, this Court provisionally certified a Fed. R. Civ. P. 23 ("Rule 23")

California Settlement Class consisting of:

> All exempt Customer Service Managers employed by Bank of the West in California at
> any time between October 1, 2013 and the date of entry of this Order, inclusive.

ECF No. 6 (Order Granting Preliminary Approval) ¶ 1.

The Court should now grant final certification of the Rule 23 Class because the

settlement meets all of the Rule 23 requirements, and because "no facts have been presented . . .

to indicate that [the] preliminary determination [to certify the settlement class] was incorrect."

---

[5]       As discussed *infra*, one of the 573 FLSA Collective Members submitted a statement to
the Court concerning the Settlement Agreement.  Although that individual lacks standing to
object because he is not a member of the California Class, Plaintiffs address his concerns, which
do not present grounds for the Court to reject the settlement.  *See infra* at 18-19.

*Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL 4996248, at *3 (S.D.N.Y. Oct. 7, 2014).

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class' interests. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).

### A.     The Class Is So Numerous That Joinder of All Members Is Impracticable.

Numerosity is satisfied when the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean that joinder must be impossible, but instead that it would be "extremely difficult or inconvenient to join all the members of the class." *Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 493 (W.D. Ark. 1984). "In making this determination, there is not a magic number, rather courts generally follow the rule of thumb that a class of over 40 is sufficiently numerous for Rule 23 purposes." *McClean v. Health Sys., Inc.*, No. 11 Civ. 03037, 2012 WL 607217, at *2 (W.D. Mo. Feb. 23, 2012) (internal quotation marks omitted). Plaintiffs satisfy numerosity because there are approximately 351 California Class Members, and joinder would be both highly impracticable and undesirable.

**B.      The Questions of Law and Fact Common to the Classes Predominate Over Questions Affecting Only Individual Class Members.**

The proposed California Settlement Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "[I]t is well established that not every question of law and fact must be common to the entire class." *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 227 (S.D. Iowa Oct. 22, 2009).  Rather, Rule 23 may be satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation[.]" *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982).

Here, Plaintiffs and California Class Members are unified by common factual allegations, namely that Defendant uniformly violated California state laws by classifying all CSMs as exempt and failing to pay CSMs the proper overtime compensation for hours worked over 40 per workweek, and that Defendant violated California record-keeping, waiting time, and meal and rest break provisions.  *See, e.g.*, *Edwards*, 2017 WL 2423792, at *1 (commonality satisfied where named plaintiff and class members "were all subject to the same policies, job descriptions and responsibilities, and they were all paid the same wages").

**C.      Named Plaintiffs' Claims Are Typical of the Claims of the Class Members.**

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3).  "Typicality means that there are other members of the class who have the same or similar grievance as the plaintiff." *McClean*, 2012 WL 607217, at *3 (W.D. Mo. Feb. 23, 2012) (internal quotation marks omitted).  "A named plaintiff's claim is typical if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Jones*, 266 F.R.D. at 228

(internal quotation marks omitted).  "Factual variations in the individual claims will not normally

preclude class certification if the claim arises from the same event or course of conduct as the

class claims, and gives rise to the same legal or remedial theory."  *Alpern v. UtiliCorp United,*

*Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

In this case, Plaintiffs and Class Members all worked as exempt CSMs and suffered the

same violations of the law.  This satisfies the typicality requirement.  *See, e.g.*, *McClean*, 2012

WL 607217, at *3 (typicality satisfied where representatives subject to uniform payroll policies).

### D.    Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The focus of Rule 23(a)(4) is whether: (1)

the class representatives have common interests with the members of the class, and (2) whether

the class representatives will vigorously prosecute the interests of the class through qualified

counsel."  *Paxton*, 688 F.2d at 562-63.

Here, Plaintiffs have selected counsel capable of adequately representing the class's

interests.  *See, e.g.*, *Williams v. Metro-North R.R. Co.*, No. 17 Civ. 3847, 2018 WL 3370678, at

*4 (S.D.N.Y. June 28, 2018), *report and recommendation adopted*, 2018 WL 3368713

(S.D.N.Y. July 10, 2018) ("O&G [ ] are experienced, highly regarded members of the plaintiffs'

employment bar in New York and nationally . . . ."); *Bijoux v. Amerigroup New York, LLC*, No.

14 Civ. 03891 (E.D.N.Y. Feb. 9, 2016) (appointing O&G as Class Counsel) (attached as Ex. D);

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (noting that O&G and SLG

"are experienced employment lawyers with good reputations among the employment law bar[]");

*Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12,

2012) (appointing O&G and SLG as Class Counsel based on their experience in "numerous wage

and hour class and collective actions"); *see also* Swartz Decl. ¶ 12; Affidavit of Gregg I. Shavitz ¶ 11; Affidavit of Dorothy O'Brien ¶¶ 4-6.  In addition, Plaintiffs have the same interests and seek the same relief as all other California Class Members—to receive the overtime compensation allegedly owed to them.  *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (adequacy satisfied where there was no evidence that named plaintiffs' and class members' interests were at odds or that the claims were not vigorously pursued).  Thus, for the purposes of this settlement, the adequacy requirement is satisfied.

###### E.   Certification is Proper under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

###### 1.   Common Questions Predominate.

The predominance requirement is met if "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, . . . obviat[ing] the need to examine each class member's individual position."  *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995).  "However, certification is not precluded merely because damage calculations may require an individual determination."  *McClean*, 2012 WL 607217, at *4.

Here, Plaintiffs' common contentions predominate over any factual or legal variations among California Class Members.  *See Edwards*, 2017 WL 2423792, at *2 (predominance satisfied for settlement purposes where class members "were all subject to the same policies, job descriptions and responsibilities, and they were all paid the same wages"); *Jones*, 266 F.R.D. at

228-29 (predominance satisfied for settlement purposes where plaintiffs alleged that "[d]efendants had a policy and practice of failing to properly document and compensate . . . Assistant Managers for all hours worked . . . .").

### 2.     A Class Action is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement.  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum.  *See* Fed. R. Civ. P. 23(b)(3).[6]

The class action device is superior here because California Class Members have limited financial resources to prosecute individual actions.  In addition, employing the class device will achieve economies of scale, conserve the resources of the judicial system, and avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. *See, e.g.*, *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1123 (D. Minn. 2009) ("The class action serves to conserve the resources of the court and the parties by permitting an issue that may affect every class member to be litigated in an economical fashion.").

## II.     The Proposed Settlement is Fair, Adequate, and Reasonable.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  "[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor."  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (internal quotation marks and brackets omitted).  The public policy favoring voluntary resolution is "particularly

---

[6]     "Manageability," need not be considered in deciding whether to certify a class for settlement purposes only, as the litigation would not proceed on the basis of the certified settlement class if settlement is unsuccessful. *See Jones*, 266 F.R.D. at 229.

strong in the class action context." *George v. Uponor Corp.*, No. 12 Civ. 246, 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 1995). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (quoting *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)) (internal quotation marks omitted).

As set forth by the Eighth Circuit in *Van Horn v. Trickey*, "[t]he district court must consider a number of factors in determining whether a settlement is fair, reasonable, and adequate: [(1)] the merits of the plaintiff's case, weighed against the terms of the settlement; [(2)] the defendant's financial condition; [(3)] the complexity and expense of further litigation; and [(4)] the amount of opposition to the settlement." 840 F.2d 604, 607 (8th Cir. 1988). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* Eighth Circuit courts recognize the "overarching principle[ ]" that "a settlement that is the product of arm's-length negotiations conducted by experienced counsel is presumed to be fair and reasonable." *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

### A.   The Settlement Was the Result of Extensive Arm's-Length Negotiations and a Mediator's Proposal.

The parties participated in extensive arm's-length negotiations to reach the settlement. After exchanging pertinent information, the parties engaged in two in-person mediations and ultimately agreed to a mediator's proposal. *See surpa* at 3-4. After additional negotiations, the parties executed a term sheet based on mutual and confidential acceptance of the mediator's proposal in January 2017. Swartz Decl. ¶ 23. The parties negotiated additional terms to finalize

the settlement agreement, which was executed on February 27, 2018. *Id*. ¶ 24. Based on these circumstances, the parties were fully equipped to reach a fair, adequate, and reasonable settlement, and the parties' agreement is entitled to a presumption of fairness and reasonableness. *See Jones*, 266 F.R.D. at 229-30 (settlement negotiated and agreed to by parties with aid of experienced mediator entitled to presumption of fairness and reasonableness).

**B.     The Settlement Satisfies the *Van Horn* Factors.**

**1.     Balancing the Strength of Plaintiffs' Case Against the Terms of the Settlement Favors Approval.**

Although Plaintiffs believe that their case is strong, it is subject to risk. Class actions inherently involves "capricious uncertainty, extensive time, and exorbitant costs." *George*, 2015 WL 5255280, at *7. The "very object of compromise is to avoid the determination of sharply contested and dubious issues" and in weighing the strength of Plaintiffs' case against the benefits provided by the proposed settlement, the court "cannot be expected to balance the scales with the nicety of an apothecary." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993) (internal quotation marks omitted).

**a.     Risk on the Merits and Class Certification Support the Settlement.**

While Plaintiffs believe that they could ultimately establish Defendant's liability, this would require significant factual development. A trial on the merits would involve considerable risks for Plaintiffs as to both liability and damages. Plaintiffs would have to overcome Bank of the West's defense that Plaintiffs and Class Members were subject to the administrative, executive, and/or combination exemptions to the FLSA, and the corresponding California exemptions. For example, in *Bell v. Citizens Financial Group, Inc.*, a Western District of Pennsylvania case which involved Assistant Branch Managers similar to Bank of the West's CSMs, the jury returned a defense verdict. *See Bell v. Citizens Fin. Grp., Inc.*, No. 10 Civ. 320

(W.D. Pa) (attached as Ex. E).  Plaintiffs would also have to prove willfulness to obtain a third

year of damages.  *See* 29 U.S.C. § 255(a).

Plaintiffs also face the significant risk of obtaining class certification and maintaining it

through trial.  The Court has not yet finally certified a Rule 23 class, and the parties anticipate

that, should they revert to a pre-settlement posture, determining whether class certification is

appropriate would require further discovery and exhaustive briefing.  In opposing class

certification, Defendant would likely argue that the differences among various branches and

other individualized questions preclude class certification.  Although Plaintiffs disagree with

these arguments, defendants have prevailed on arguments like these.  *See, e.g.*, *Scott v. Chipotle*

*Mexican Grill, Inc.*, No. 12 Civ. 8333, 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017)

(decertifying 516-person collective seeking unpaid wages and denying certification of multiple

Rule 23 state law classes in misclassification case on which O&G is counsel).

### b.      The Settlement Agreement Provides a Favorable Recovery for the Class.

Defendant has agreed to settle this case for a Maximum Settlement Amount of up to

$2,620,000.00 – a substantial amount.  This amount represents substantial value given the

attendant risks of litigation, even though recovery could be greater if Plaintiffs attained both

collective and class certification, overcame motions to decertify any class or collective,

succeeded on all claims at trial, and survived an appeal.

"As courts routinely recognize, a settlement is a product of compromise and the fact that

a settlement provides only a portion of the potential recovery does not make such settlement

unfair, unreasonable or inadequate."  *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) (internal

quotation marks omitted).

Here, the settlement provides much more than a fraction of the potential recovery.  By

15

Class Counsel's estimation, the Maximum Settlement Amount represents approximately 32 percent of Class Members' lost wages, meal and rest break damages, wage statement penalties, and waiting time penalties from October 1, 2013 and April 16, 2018.[7]  Swartz Decl. ¶ 30.  The settlement represents a substantial recovery for Class Members, in light of the risk of losing certification, having a collective action decertified, losing on the merits, and losing on appeal.

Class Members who submitted valid Claim Forms will receive an average settlement payment of approximately $1,694.58 (net of attorneys' fees and costs, administration fees, service awards, payments to individual plaintiffs, and payment to LWDA for its share of PAGA penalties).  *Id*. ¶ 33.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.  In other wage and hour class and collective action settlements involving similar customer service manager titles, the average settlement payment for class members has been in the same range or less than the result achieved here.  For example, in *Clem v. KeyBank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014), the average net settlement payment was approximately $1,191.06.  *Id*. ¶ 34.

### 2.    Defendant's Financial Condition Favors Approval.

Defendant voluntarily agreed to the Maximum Settlement Amount in the Settlement Agreement and there is no indication that Defendant's financial condition would prevent it from funding the required amount.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005).  Further, there is no argument that consideration of Defendant's

---

[7]    These calculations assume Class Members worked overtime during an average of 70 percent of workweeks per year and worked five overtime hours a week, that Defendant were to prevail on the fluctuating workweek argument, and assumes Class Members missed meal and rest breaks bimonthly.  Swartz Decl. ¶ 31.

financial condition should have resulted in a better settlement agreement. *See George*, 2015 WL 5255280, at *7. Accordingly, this factor weighs in favor of final approval.

### 3.     The Complexity and Expense of Further Litigation Favors Approval.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Khoday v. Symantec Corp.*, No. 11 Civ. 18, 2016 WL 1637039, at *6 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017). This case is no exception, with approximately 351 California Class Members and claims under federal and state law.

Further litigation would cause additional expense and delay. Extensive discovery would be required to establish liability and damages. In addition, the parties likely would file cross-motions for summary judgment on Bank of the West's exemption defense. If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and Class Members' exemption status. A trial would be lengthy and complex and would consume tremendous time and resources for all parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.

### 4.     The Reaction of the Class Favors Approval.

In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that objects to and opts out of the settlement. Where relatively few class members opt out or object to the settlement, the lack of opposition supports court approval of the settlement. *See Jones*, 266 F.R.D. at 230; *DeBoer*, 64 F.3d at 1178.

Here, of the 351 California Class Members, not one has objected to or requested

17

exclusion from the settlement. *See* Ex. C (Hughes Decl.) ¶ 21. This fact "strongly supports settlement approval." *Zilhaver v. United Health Group, Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009). Moreover, approximately 65% of the Class, or 604 Class Members, have submitted Claim Forms. *Cf. Eastwood v. S. Farm Bureau Cas. Ins. Co.*, No. 11 Civ. 03075, 2014 WL 4987421, at *1 n.1, *4 (W.D. Ark. Oct. 7, 2014) (approving settlement with 17% participation rate).

Because the reaction of the Class has been positive, the fourth *Van Horn* factor weighs in favor of approval, and the settlement should be approved as fair, adequate, and reasonable.

### 5.    The Objections of a Non-Participating Potential FLSA Opt-In Plaintiff Are Without Merit.

A potential opt-in FLSA Plaintiff from Oregon, who is not a member of the California Class, sent a letter that he does "not consent to join and participate as a plaintiff, nor [be] bound by any adjudication in the litigation" and included objections to Class Counsel's percentage of the fund recovery and the form of the FLSA Notice. Ex. C (Hughes Decl.) at Ex. C (Statement of Bretley D. Hanson ("Hanson Statement")). As a potential FLSA opt-in Plaintiff, Mr. Hanson is not bound by the settlement if he does not opt in to the case and does not have standing to object to the Rule 23 California Class settlement.

Even if Mr. Hanson had standing to object, however, his objections are without merit. Mr. Hanson's objection to the settlement amount does not adequately account for the risks involved in prosecuting Class Members' claims and overlooks the very real possibility that Class Members could have received nothing after many years of litigation. Mr. Hanson's argument that Class Counsel's fees are disproportionate to the settlement value disregards both the substantial benefit conferred on Class Members, *see supra* at 15-16, and Eighth Circuit case law regarding fee applications in common fund cases. *See Huyer v. Buckley*, 849 F.3d 395 397-400

(8th Cir. 2017) (affirming fee award of one-third of total settlement fund of $25.75 million); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36 percent of $3.5 million settlement fund). Mr. Hanson's objection also disregards the fact that Counsel prosecuted this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Swartz Decl. ¶ 35.

Equally unavailing are Mr. Hanson's concerns regarding the content of the FLSA Notice, which was Court-approved. The Notice is written in plain English and is organized and formatted so as to be as clear as possible. *Id*. ¶ 36. It is based on the model notice forms provided by the Federal Judicial Center on its website (www.fjc.gov). *Id.* ¶ 37. The Notice also describes the allocation formula, the estimated amount to which the Class Members are entitled, the opt-in process, the scope of the release, the fees and costs that Plaintiffs' Counsel will seek and the proposed Service Awards to Named Plaintiffs. *See* Ex. C (Hughes Decl.) at Ex. B (Collective Notice) §§ 6-8, 10, 12. The Notice provides contact information for Plaintiffs' Counsel and discloses the date, time, and place of the Fairness Hearing. *See id*. at Ex. B (Collective Notice) §§ 13, 16. Contrary to Mr. Hanson's representations, the California Rule 23 Notice included instructions on how California Class Members could object to the settlement. *See id*. at Ex. A (California Notice) § 15.

For the foregoing reasons, the Court should overrule Mr. Hanson's objections.

## III. Approval of the FLSA Settlement is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of the FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See* Ex. A (Settlement Agreement) § 1.23. Because, under the FLSA, "parties may elect to opt in but a

19

failure to do so does not prevent them from bringing their own suits at a later date," FLSA

collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna*

*v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by*

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).  Accordingly, the high standard for

approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements where the litigation involves a *bona fide* dispute and

the proposed settlement is fair and equitable.  *See Boland v. Baue Funeral Home Co.*, No. 15

Civ. 00469, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015).  "A settlement is *bona fide* if it

reflects a reasonable compromise over issues actually in dispute . . . ."  *King v. Raineri Constr.,*

*LLC*, No. 14 Civ. 1828, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015).

Here, the settlement was the product of extensive arm's-length negotiations involving

vigorous back and forth, and a mediator's proposal.  Swartz Decl. ¶ 25.  During the entire

process, Plaintiffs and Defendant were represented by counsel experienced in wage and hour

law.  Moreover, as discussed above, the settlement provides substantial value given the attendant

risks of litigation.  *See supra* at 14-16.  Because the Settlement Agreement resolves a clear and

actual dispute, was reached after arm's length settlement negotiations, and provides a favorable

recovery for members of the FLSA Collective who opt in, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify

the California Settlement Class for the purposes of effectuating this settlement; (2) grant final

approval of the California Settlement Class settlement; and (3) approve the FLSA settlement.

Dated: New York, New York
      July 26, 2018

                Respectfully submitted,

                /s/ *Justin M. Swartz*

                OUTTEN & GOLDEN LLP
                Justin M. Swartz (admitted *pro hac vice*)
                Sally J. Abrahamson (admitted *pro hac vice*)
                685 Third Ave., 25th Floor
                New York, NY 10017
                (212) 245-1000
                jms@outtengolden.com

                Dorothy A. O'Brien
                O'Brien & Marquard, P.L.C.
                2322 E. Kimberly Road Ste. 100E
                Davenport, IA 52807
                Telephone: (563) 355-6060
                Fax: (563) 355-6666
                Email: dao@emprights.com

                SHAVITZ LAW GROUP, P.A.
                Gregg I. Shavitz (admitted *pro hac vice*)
                Paolo C. Meireles (admitted *pro hac vice*)
                  1515 S. Federal Hwy., Suite 404
                Boca Raton, FL 33486
                (561) 447-8888
                gshavitz@shavitzlaw.com
                pmeireles@shavitzlaw.com

                *Attorneys for Plaintiffs and the Putative Collective and Class*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2018, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By: _/s/ Justin M. Swartz_____
    Justin M. Swartz