**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**DAVENPORT DIVISION**

| | | |
|---|---|---|
| MARIA MELLER, DEBRA ANDERSON, CYNTHIA PASH, and EDDIE CAPOVILLA, on behalf of themselves and those similarly situated, | * * * * | CIVIL NO. 3:18-cv-00033-JAJ-SBJ |
| | * | |
| Plaintiffs, | * | **REPORT AND RECOMMENDATION** |
| | * | |
| v. | * | |
| | * | |
| BANK OF THE WEST, | * | |
| | * | |
| Defendant. | * | |
| | * | |

This matter is before the Court on Plaintiffs' Notice of Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement (Dkt. 23), Plaintiffs' Notice of Unopposed Motion for Approval of Service Payments (Dkt. 24), and Plaintiffs' Notice of Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses (Dkt. 25). These motions were referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for submission of a report and recommendation regarding disposition of the motions. Dkt. 26. A hearing was held on the motions on August 9, 2018. Dkt. 30. Attorneys Sally Abrahamson and Dorothy O'Brien appeared on behalf of plaintiffs, and Attorneys Daniel Kresowik and Andrew Livingston (via telephone conference call) appeared on behalf of the defendant. *Id.*

For the reasons set forth below, this Magistrate Judge recommends (1) granting Plaintiffs' Notice of Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement; (2) granting Plaintiffs' Notice of Unopposed Motion for Approval of Service Payments; and (3) granting Plaintiffs' Notice of

Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses. It is further recommended that the Court enter the Proposed Final Approval Order (Dkt. 23-4).

## I.   Background

Plaintiffs, Maria Meller, Debra Anderson, Cynthia Pash and Eddie Capovilla, brought this lawsuit individually, and on behalf of others similarly situated, against Bank of the West on March 29, 2018. Dkt. 1. Through this lawsuit, plaintiffs seek to recover overtime compensation for plaintiffs and similarly situated co-workers, who worked as customer service managers at Bank of the West branch locations in the United States. *Id.* ¶ 1. Plaintiffs are current and former employees of defendant, who worked as customer service managers at over 600 locations for Bank of the West in Iowa, California and approximately 17 other states, between October 1, 2013 and April 16, 2018. Dkt. 23-1, pp. 7-8. Plaintiffs allege that Bank of the West violated the Fair Labor Standards Act and California law by improperly classifying them as exempt employees, and failing to pay them and other customer service managers overtime wages. Dkt. 1 ¶¶ 5, 10-12.

Prior to filing this lawsuit, plaintiffs' counsel investigated the merits of the claim, examined the proper measure of damages and legal exemptions that apply to the banking industry and determined the likelihood of class and collective certification. Dkt. 23-2 ¶ 13. Plaintiffs' counsel conducted in depth interviews with plaintiffs and other customer service managers to determine hours that they worked, wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims. *Id.* ¶ 14. Bank of the West produced payroll information for customer service managers, as well as other documents, all of which plaintiffs' counsel reviewed and used to perform damages calculations. *Id.* ¶¶ 15, 18.

The parties participated in mediation on October 16, 2014. Dkt. 23-2 ¶ 19. The mediation session was conducted by David Rotman, an experienced class action mediator. *Id.* After a full

day of negotiations, the parties were unable to reach an agreement. *Id.* ¶ 21. Although they were initially unsuccessful, the parties agreed to participate in another mediation session with Mr. Rotman on February 12, 2015. *Id.* The parties continued further negotiations after the second mediation session, all with the continued assistance of Mr. Rotman, and reached an agreement, which the parties executed on February 27, 2018. *Id.* ¶¶ 22-24.

## A.  The Settlement

The settlement class includes customer service managers eligible to receive settlement payments comprised of two groups: (1) all individuals employed by Bank of the West as customer service managers in any states other than California between October 1, 2013 and April 16, 2018 ("FLSA Collective Members"); and (2) all individuals employed by Bank of the West as customer service managers in California between October 1, 2013 and April 16, 2018 ("California Class Members"). Dkt. 23-3 §§ 1.6, 1.23. The parties estimate there are approximately 573 FLSA Collective Members and approximately 351 California Class Members. Dkt. 23-2 ¶ 28.

Bank of the West agreed to fund a settlement amount of $2,620,000 to resolve the FLSA Collective Members' and California Class Members' claims. Dkt. 23-3 § 1.29. The maximum settlement amount will cover individual settlement awards for those class members who have submitted claims; court approved attorneys' fees and costs for class counsel; court approved service awards to plaintiffs; employee payroll taxes; payments to individuals whose claims were included in the parties' discussions, but which have since fallen outside the settlement class period; the claims administrator's fees and costs; and payment to the California Labor and Workforce Development Agency of a percentage of the penalties allotted to claims under the California Labor Code Private Attorneys General Act. *Id.*

The proportionate share of the class settlement fund that each FLSA Collective Member

and California Class Member is eligible to claim is calculated based on weeks worked from October 1, 2013 through April 16, 2018, as reflected in Bank of the West's recently available business records. *Id.* § 9.5.  A claims administrator will assign each FLSA Collective Member one point for each eligible week worked as a customer service manager and each California Class Member three points for each eligible week worked as a customer service manager. *Id.* All points will be added together to obtain a denominator, and then each individual class member's number of points will be divided by the denominator to obtain each individual's portion of the class settlement fund, which will be multiplied by that fractional amount to determine each individual's net amount. *Id.* Each FLSA Collective Member and California Class Member who submits a valid claim form to the claims administrator prior to a bar date will receive a settlement payment under the terms of the settlement agreement. *Id.* §§ 1.2, 1.8.

The settlement agreement contemplates that all California Class Members who do not opt out of the settlement will release California wage and hour claims arising out of their employment as a customer service manager for the period October 1, 2013 through April 16, 2018. *Id.* §§ 1.37, 10.1(A). Additionally, all FLSA Collective Members who opt-in and California Class Members who return a valid claim form will release all federal and applicable state law wage and hour claims arising out of their employment as a customer service manager from October 1, 2013 through April 16, 2018. *Id.* §§ 1.38, 10.1(B).

### B. Preliminary Approval

Plaintiffs filed a Notice of Motion for Preliminary Approval of Class and Collective Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notices of Settlement (Dkt. 5) on April 12, 2018. Chief Judge John A. Jarvey preliminarily approved the settlement, certified the class for settlement purposes only, found that the settlement agreed had no obvious defects and was within the range

of possible settlement approval such that notice to the class as set forth in the settlement agreement was appropriate, appointed plaintiffs' counsel as class counsel, and approved the class administrator. Dkt. 6. Further, the Court found the method of disseminating the notices was the best notice practicable under the circumstances and met the requirements of federal law, as set forth in the settlement agreement. *Id.* ¶¶ 6, 8.

The Court set a fairness hearing for August 9, 2018 at 12:00 p.m. to address whether the settlement agreement should be finally approved, counsel's application for attorneys' fees and plaintiffs' application for service payments. *Id.* ¶ 15. Further, the Court ordered that any FLSA Collective Member or California Class Member will have 60 days from the initial mailing of the notice to participate in the settlement, and California Class Members will have 60 days from the initial mailing of the notice to object to or opt out of the settlement. *Id.* ¶ 14.

### C. Notice

On May 16, 2018, a claims administrator mailed notices of settlement to 573 FLSA Collective Members and 351 California Class Members via first class mail. Dkt. 23-5 ¶ 12. The notices advised class members they could submit a claim form and advised California Class Members they could submit a written request for exclusion or objection post marked by July 15, 2018. *Id.* Thirty-eight notices were returned as undeliverable, and of those 38 notices, the claims administrator performed address traces, and re-mailed 31 of the notices to class members for whom new addresses were located. *Id.* ¶ 13. Ultimately, notices were undeliverable for a total of 8 class members. *Id.* On June 4, 2018, and again on June 25, 2018, the claims administrator mailed reminder post cards to class members who had not yet returned claims forms. *Id.* ¶¶ 15-16.

From these notices, 344 FLSA Collective Members and 260 California Class Members submitted claim forms and are due to receive settlement payments if the settlement is given final

approval. *Id.* ¶ 17. The claims administrator received no requests for exclusions, and received one objection from an FLSA Collective Member who did not timely submit a claim form. *Id.* ¶ 21. This FLSA Collective Member is not bound by the settlement if he does not opt into the case. Dkt. 23-3 §§ 1.38, 10.1(B).

## II. Plaintiffs' Notice of Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement (Dkt. 23)

In their motion, plaintiffs request the Court certify the California settlement class for the purposes of effectuating settlement, grant final approval of the California class settlement and approve the FLSA settlement.

### A. Certification of the Settlement Class

No class has yet been certified in this action, and plaintiffs request the Court certify a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). Dkt. 23-1 pp. 7-8. Defendant does not oppose the request. Plaintiffs note that this Court provisionally certified a California settlement class on April 16, 2018, consisting of: "all exempt customer service managers employed by Bank of the West in California at any time between October 1, 2013 and the date of the entry of this order, inclusive." Dkt 6 ¶ 1. Plaintiffs assert that a final certification of this class should be granted because the class meets all of the requirements of Federal Rule of Civil Procedure 23, and because no facts have been presented to indicate the preliminary determination to certify the class was incorrect. Dkt. 23-1 p. 7 (citation omitted).

To certify a class, plaintiff must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The prerequisites for class certification under Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also Amchem*, 521 U.S. at 613, 117 S.Ct. 2231.

Beginning with numerosity, the Court notes that there are approximately 351 California Class Members. Dkt. 23-2 ¶ 28.

> [T]he numerosity requirement of Rule 23(a)(1) requires an inquiry into whether the class is "so numerous that joinder of all members is impracticable." A number of factors are relevant to this inquiry, the most obvious of which is, of course, the number of persons in the proposed class. No arbitrary rules regarding the necessary size of classes have been established. *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977). In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1762.

*Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-560 (8th Cir. 1982). A joinder of 351 class members, while not impossible, would be extremely difficult or inconvenient to do. Further, with this number of potential plaintiffs, trying individual suits would be highly inconvenient. Because of that, joinder would be both highly impracticable and undesirable. The parties do not dispute, and the Court agrees, that the joinder of 351 plaintiffs would be impracticable. Accordingly, the numerosity requirement is satisfied.

Concerning commonality, the threshold is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995) (citations and internal quotations omitted). "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Donaldson v. Pillsbury Co.*, 554 F.2d

825, 831 (8th Cir. 1977). Here, common issues of law and fact exist and the defenses and claims are typical throughout the class. As plaintiffs note, plaintiffs and California class members are unified by common factual allegations -- that Bank of the West violated laws by classifying all customer service managers as exempt, failed to pay them overtime compensation for hours worked over 40 hours per week, and violated recordkeeping, waiting time and meal and rest break provisions. The class members will not need to present evidence on liability that varies from member to member. All class members have the same interests and remedial theories.

With respect to typicality, "the typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson*, 554 F.2d at 830 (citations omitted). Because commonality and typicality are similar, the Eighth Circuit requires under typicality that the class representative demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." *Paxton,* 688 F.2d at 562 (*quoting Donaldson*, 554 F.2d at 830). Here, Plaintiffs assert that they and the class members all worked as exempt customer service managers and suffered damages due to the same violations of the law by Bank of the West. Dkt. 23-1 p. 16. The primary factual issue is whether Bank of the West correctly classified plaintiffs and class members as exempt. This issue affects each class member uniformly and predominates over any individual issue. As such, plaintiffs' claims are typical of the class claims in that they all arise from the same course of conduct and are based on the same legal theories.

The final prerequisite is that the representative parties will fairly and adequately protect the interests of the class. Plaintiffs must show that (1) they have "common interests with the members of the class;" and (2) they "will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63. Defendant does not dispute that plaintiffs have common

interests with the class members, that plaintiffs will vigorously pursue the class' interests, or that plaintiffs' counsel is qualified. This Magistrate Judge finds that plaintiffs have pursued vigorously the interests of the class through qualified counsel, and will continue to do so. Accordingly, for purposes of this settlement, the adequacy requirement is satisfied. Further, in accordance with the finding that plaintiffs and their counsel will fairly and adequately protect the members of the class, it is recommended that plaintiffs be appointed class representatives, and their counsel be appointed class counsel.

Proceeding to Rule 23(b)(3), the Court may certify a class only upon finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623, 117 S.Ct. 2231. The primary concern "is whether defendant's liability as to all plaintiffs can be established by common evidence." *Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1029 (8th Cir. 2010). In examining this requirement, the Court is to "conduct a limited preliminary inquiry, looking behind the pleadings ... to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co*., 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted).

The primary factual issue in this case is whether customer service managers are correctly classified as exempt employees or not. This issue affects each class member uniformly and predominates over any individual issue. Liability for this cause of action would be established, for the most part, by common evidence. The primary individual issues between class members would

arise in the damages context, but those issues do not predominate over common issues or otherwise affect the cohesion of the class. For those reasons, plaintiffs satisfy the predominance requirement.

Whether a class action is the superior method to fairly and efficiently adjudicate the case implicates the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(A)-(C). When the court assesses class certification in the settlement context, it need not consider subsection (D) of Rule 23(b)(3). *See Amchem Prods.*, 521 U.S. at 620, 117 S.Ct. 2231.

There has been no showing in the present action that class members wish to individually control the prosecution of their claims. Additionally, this litigation is on the verge of resolution through settlement. Given the legal issues facing individual class members, as well as the uncertainty of success as noted by plaintiffs' counsel at oral arguments, this Magistrate Judge finds employing the class device will achieve economies of scale for class members, conserve judicial resources, and provide a uniform result for similarly situated individuals. For those reasons, the class action device is the superior manner in which to proceed on these claims and plaintiffs satisfy the superiority requirement.

Having concluded that class certification is appropriate under Rules 23(a) and (b)(3), it is recommended that the settlement class be certified as defined in the settlement agreement:

> 1.6. California Class. "California Class" shall consist of all exempt Customer Service Managers employed by [Bank of the West] in California at any time between October 1, 2013 and the Preliminary Approval Date, inclusive. A member of the California Class is a "California Class Member." The California Class is an opt-out Class, meaning unless the California Class Member affirmatively submits an Opt-out Statement (as defined below), that individual is bound by the Settlement. California Class Members must timely submit a Claim Form to be eligible to receive an Individual Settlement Payment.

> 1.7. California Settlement Class. "California Settlement Class" shall consist of all California Class Members who did not submit a timely Opt-out Statement and thereby become bound by the Settlement

Dkt. 23-3 §§ 1.6, 1.7.

## B. Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) provides that the claims of a certified class may be settled only with the court's approval. The court may approve it only after a hearing and on finding that it is fair, reasonable and adequate. Fed.R.Civ.P. 23(e)(2). According to the Eighth Circuit, the court must "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) (citation omitted). In assessing whether a proposed settlement is fair, reasonable and adequate, the court considers: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* at 932 (citation omitted). The first factor is the most important. *Id*. at 933.

First, the settlement here is presumptively valid, given the arm's-length negotiations supervised by experienced class action mediator David Rotman, the thorough investigation conducted by counsel as to the merits of plaintiffs' claims, the review of documents provided by Bank of the West to plaintiffs, the substantial experience of both plaintiff and defense attorneys and one single objection, from an individual without standing to object to the proposed settlement. Dkt. 23-2 ¶¶ 13-26.

Next, a review of the four factors for assessing a settlement weigh in favor of finding the settlement here is fair, reasonable and adequate. As for the first factor, "the outcome of the litigation would be far from certain" if the case had not settled. *In re Wireless Tel. Fed. Cost*

*Recovery Fees Litig.,* 396 F.3d at 933. Plaintiffs' counsel estimates the maximum settlement amount represents approximately one-third of class members' lost wages, meal and rest break damages, wage statement penalties and waiting time penalties. Dkt. 23-2 ¶ 30. Counsel further estimates that class members who submitted valid claim forms will receive an average settlement amount of approximately $1,700. *Id.* ¶ 33. Given the risks associated with proceeding outside of a settlement (as set forth below), the Court finds the merits of the class members' claims are proportionate to the terms of the settlement. The settlement represents a substantial recovery weighed against the risk of losing class certification, having a collective action decertified, losing on the merits and losing on appeal.

Bank of the West's financial condition is not an issue, and there is no indication that it would not be able to pay for the settlement benefit. Further, no class member suggests that Bank of the West's financial condition should have resulted in a better settlement.

Next, the complexity, expense and risk of litigation makes settlement of this class action appropriate. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (internal quotation and citation omitted). As noted in their motion, and at the hearing, plaintiffs would have to overcome defenses by Bank of the West that would present significant obstacles to recovery. Plaintiffs reference a recent case where a jury returned a defense verdict involving assistant branch managers similar to the customer service managers here. Dkt. 23-1 pp. 14-15. In addition, Plaintiffs note that defendants have prevailed on arguments against class certification in other cases. *Id.* p. 15. Prosecution of the case would require Plaintiffs to significantly develop the facts to establish liability on the part of Bank of the West. Based on all of this, class members face substantial risk in demonstrating and obtaining class certification, demonstrating liability on the part of Bank of

the West, and proving damages. The risk of litigating this case through trial and appeal supports a finding that the settlement is fair, reasonable and adequate.

Further, class reaction to the settlement has been overwhelmingly positive. The absence of any opposition to the settlement strongly supports final approval. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999). Of the 351 California class members, none have objected or requested exclusion from the settlement. Dkt. 23-5 ¶¶ 20-21. The participation rate for the California class members is approximately 75 percent. Dkt. 23-5 ¶¶ 12, 17. The only objection received was from a non-participating potential FLSA opt-in plaintiff. *Id.* As pointed out by plaintiffs in their motion, that potential FLSA opt-in plaintiff does not have standing to object to the California class settlement. Dkt. 23-1 p. 18. Further, he is not bound by the settlement if he does not opt-in to the case as he is a potential FLSA plaintiff. *Id.* In addition, his objections relate primarily to adequacy of the settlement amount, attorneys' fees and notice. As set forth above and below, those objections are without merit. In sum, the proposed settlement is fair, reasonable and adequate, and it is recommended it be granted final approval.

Finally, Rule 23(e)(1) requires a court to "direct notice" of a proposed settlement "in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1). On April 16, 2018, Chief Judge Jarvey approved the form and manner of notice, and notice was emailed and mailed as directed. Dkt. 6. This Magistrate Judge now finds that the notice of the proposed settlement constituted the best practicable notice, was reasonable, and gave due, adequate, and sufficient notice to all individuals entitled to receive notice. Further, the notice was reasonably calculated to advise class members of the litigation, their right to object to the settlement, and their right to appear at the final approval hearing. Thus, the notice fully satisfied the requirements of Rule 23 and due process. *See DeBoer*, 64 F.3d at 1176. It is recommended that

the notice sent to class members be granted final approval.

### C. Approval of FSLA Settlement

"A district court may only approve an FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Boland v. Baue Funeral Home Co.*, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015). In this case, the settlement agreement resolves a clear and actual dispute between the parties. Indeed, the proposed settlement is the product of an extensive settlement process and negotiation, which involved the exchange of a significant amount of information and utilization of a qualified third-party neutral to facilitate a settlement. The parties detailed at the hearing on approval of the motions the real risks faced by plaintiffs that could bar recovery and defendant outlined its previous success in a related case. While plaintiffs' claims have merits, there are risks associated with those claims, especially given the outcome of other cases with parties in similar circumstances. For those reasons, the settlement reflects a reasonable compromise over issues that are actually in dispute between these parties, and it is recommended that the settlement for the FLSA class members be approved.

### III. Plaintiffs' Notice of Unopposed Motion for Approval of Service Payments (Dkt. 24)

Plaintiffs move for a class representative service award in the amount of $8,000 to each of the named plaintiffs, Maria Meller, Eddie Capovilla, Cynthia Pash and Debra Anderson, in recognition of the services they rendered on behalf of the class. Defendant does not oppose such requests. The relevant factors to be considered in deciding whether an incentive award to a named plaintiff is warranted include the actions a plaintiff took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing litigation. *In re US Bancorp Litig.* 291 F.3d 1035, 1038 (8th Cir. 2002)

(citation omitted).

In this case, the proposed $8,000 service fee award to compensate each class representative for their work in initiating the case, providing detailed factual information concerning their job duties, Bank of the West work policies and other information relevant to their claims, and participation in the settlement process is reasonable. In addition, and most significantly, the risks each of the plaintiffs took warrant such an award. Each plaintiff faces the risk of retaliation from their current employers, the potential of being blacklisted by future employers, placing their ability to secure future employment at risk. Accordingly, it is recommended that the proposed service payments be approved.

### IV. Plaintiffs' Notice of Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses (Dkt. 25)

Rule 23(h) provides that: "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h).

> "Courts utilize two main approaches to analyzing a request for attorney fees." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id*. "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244–45. "It is within the discretion of the district court to choose which method to apply." *Id.* at 246.

*Huyer v. Buckley,* 849 F.3d 395, 398 (8th Cir. 2017) (citing *Johnston v. Comerica Mortg. Corp*., 83 F.3d 241, 244–45 (8th Cir.1996)).

In *Huyer,* assessing the reasonableness of a fee award, the Eighth Circuit reviewed the factors analyzed by the district court and set forth in *Johnson v. Georgia Highway Express,* 488

F.2d 714, 717-20 (5th Cir. 1974). *Huyer*, 849 F.3d at 398. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-20, (*abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989)).

Here, class counsel requests one-third of the maximum settlement amount, $873,333.33, for their work on behalf of the class and reimbursement of $31,375.72 in out-of-pocket litigation expenses.[1]  The requested fees and expenses were identified in the notices provided to all potential class members. An award of 33 1/3% of the maximum settlement amount is in line with other awards in the Eighth Circuit. *See*, *e.g., Huyer* 849 F.3d at 400 (finding an award of 33 1/3% of the settlement fund to be reasonable and fair); *In re U.S. Bancorp Litig.,* 291 F.3d at 1038 (concluding that a district court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F.Supp.2d 1057, 1061 (D.Minn. 2010) (finding that an award of 36% of a class action settlement fund was "in line with the range of fees approved by the Eighth Circuit"); *In re Xcel Energy, Inc., Sec., Derivative &*

---

[1] The amount of $31,375.72 is requested in Plaintiffs' Notice of Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses. Dkt. 25 p. 2. However, in the conclusion to Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, plaintiffs request reimbursement for expenses in the amount of $30,458.32. Dkt. 25-1 p. 25. Upon inquiry by this Magistrate Judge at a status conference (Dkt. 35), counsel for plaintiffs confirmed this was a typographical error and the correct amount of expenses sought is $31,375.72.

*"ERISA" Litig.*, 364 F.Supp.2d 980, 998 (D. Minn. 2005) ("courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions."). The proposed fee award compares with other fee awards in the Eighth Circuit, especially considering the complex nature of the litigation, the substantial risks involved, the quality of the work performed, and the efficient manner in which the litigation was resolved.

Plaintiffs' counsel obtained a concrete and substantial benefit for the class members. The experience, reputation and the ability of class counsel support the fee request. All of the attorneys in this case have relevant experience in class action litigation. Class counsel engaged in lengthy settlement negotiations to achieve this agreement, which included an extensive investigation of the claims, in depth interviews of the named plaintiffs and other class members to determine the hours they worked, the wages they were paid, and the nature of their duties and responsibilities. The time and labor in support of the claims of the class members included time and effort analyzing the merits of the claims, the proper measure of damages, legal exemptions applicable to the banking industry and the likelihood of class and collective certification.

Counsel in this case took the case on a contingency fee basis with no guarantee of success, with the real risk and possibility of no recovery and no fee of any kind. The amount involved in this case, as well as the results obtained, support the fee request as well. Plaintiffs and their attorneys faced great risks in this litigation. As set forth above, there exist a number of hurdles plaintiffs would have to overcome to receive any recovery. If plaintiffs recovered nothing, their attorneys would receive nothing. Importantly, there was only one objection to the settlement raised, although that objector lacks standing. Based on the analysis set forth above, the objection is meritless. Notably, one objection from a class and collective of 924 members, is a very low rate of objection, which also supports the reasonableness of the fee award.

Finally, cross checking the fee request against the lodestar in this case also demonstrates its reasonableness. *See Huyer* 849 F.3d at 399 (use of the lodestar is warranted to double check the result of the percentage of benefit method) (citations omitted). Here, class counsel indicates the lodestar is $523,700.22. Dkt. 23-2 ¶¶ 52-53. The request for fees of $873,333.33 produces a lodestar that is approximately 1.67 -- well within the range of multipliers courts have allowed. *See Huyer,* 849 F.3d at 399 (finding multiplier of 1.82 reasonable); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 103, 123 (2d Cir. 2005) (finding multiplier of 3.5 appropriate in class action that was litigated for seven years); *Nelson v. Wal–Mart Stores, Inc.,* 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6). As such, the lodestar cross check further supports the reasonableness of the fee requested. Accordingly, it is recommended that an order be entered awarding $873,333.33 in attorney fees, and $31,375.72 in out-of-pocket litigation expenses.

## V. Conclusion and Recommendation

After an examination of the evidence and pleadings submitted by the parties, for the reasons set forth herein, this Magistrate Judge recommends (1) granting Plaintiffs' Notice of Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement (Dkt. 23); (2) granting Plaintiffs' Notice of Unopposed Motion for Approval of Service Payments (Dkt. 24); and (3) granting Plaintiffs' Notice of Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses (Dkt. 25). It is further recommended that the Proposed Final Approval Order (Dkt. 23-4) be entered.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), the parties shall have 14 days from the date of this Report and Recommendation to serve and file specific objections to the proposed findings and recommendations.

IT IS SO ORDERED.

Dated September 10, 2018.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE